**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br>JOSHUA LEE SHOOK and<br>JESSICA LYNN SHOOK,<br>Debtors. | Case No. 26-32515-swe7<br>Chapter 7 |
| ROBERT T. RUXTON III,<br>MARGARET E. RUXTON, and<br>GARAGE CANDY AUTOS, LLC,<br>Plaintiffs,<br>v.<br>JOSHUA LEE SHOOK and<br>JESSICA LYNN SHOOK,<br>Defendants. | Adversary No. 26-03089-swe |

**PLAINTIFFS' FIRST AMENDED COMPLAINT OBJECTING TO DISCHARGE AND TO DETERMINE DISCHARGEABILITY OF DEBT**

Plaintiffs Robert T. Ruxton III, Margaret E. Ruxton, and Garage Candy Autos, LLC ("Plaintiffs") file this First Amended Complaint against Defendants Joshua Lee Shook and Jessica Lynn Shook ("Defendants") and allege as follows:

## I. AMENDMENT AS OF RIGHT

1. On October 9, 2026, Defendants filed their Partial Motion to Dismiss, Alternative Request for More Definite Statement, and Unopposed Motion to Quash Service (Doc. 9). Plaintiffs file this First Amended Complaint once as a matter of course within 21 days after service of that motion under Federal Rule of Civil Procedure 15(a)(1)(B), made applicable by Federal Rule of Bankruptcy Procedure 7015. Leave of Court is not required, and none is requested.

2. The Clerk reissued the summons, and service of the reissued summons and the original complaint on Defendants was completed on October 14, 2026 (Docs. 11–14). No alias summons is required. See Fed. R. Bankr. P. 7004(e); Fed. R. Civ. P. 5(a)(1)(B), (b)(1), made applicable by Fed. R. Bankr. P. 7005.

## II. PARTIES

3. Plaintiffs Robert T. Ruxton III and Margaret E. Ruxton are individuals residing in Ellis County, Texas, and are creditors of Defendants.

4. Plaintiff Garage Candy Autos, LLC is a limited liability company organized under the laws of Texas with its principal place of business in Ellis County, Texas, and is a creditor of Defendants.

5. Defendant Joshua Lee Shook is a debtor in Chapter 7 Case No. 26-32515-swe7. He appeared through counsel and may be served through counsel and at 3530 S. Echo Trl., Plano, TX 75023.

6. Defendant Jessica Lynn Shook, formerly known as Jessica Estep, is a joint debtor in Chapter 7 Case No. 26-32515-swe7. Exhibit 13 at 1. She appeared through counsel and may be served through counsel and at the same address.

## III. JURISDICTION, VENUE, AND STATEMENT UNDER RULE 7008

7. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts) and § 157(b)(2)(J) (objections to discharge).

8. Venue is proper in this District under 28 U.S.C. § 1409(a) because this proceeding arises in and relates to a case under title 11 pending in this District.

9. Under Federal Rule of Bankruptcy Procedure 7008, Plaintiffs state that this proceeding is core and that Plaintiffs consent to the entry of final orders or judgment by this Court.

10. This proceeding relates to the joint Chapter 7 case of Joshua Lee Shook and Jessica Lynn Shook, Case No. 26-32515-swe7, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The related case of Lazy S Enterprises, LLC, Case No. 26-32514-mvl7, is also pending in this Court.

11. Defendants filed their voluntary Chapter 7 petition on June 4, 2026. Exhibit 13 at 1. The meeting of creditors under 11 U.S.C. § 341 was held on July 14, 2026. Id. at 2. Plaintiffs filed their original complaint on September 8, 2026, before the September 14, 2026 deadline to object to discharge and to file complaints under 11 U.S.C. § 523(c). Exhibit 13 at 2. The claims in this First Amended Complaint arise out of the conduct, transactions, and occurrences set out, or attempted to be set out, in Plaintiffs' original complaint and relate back to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(1)(B), made applicable by Federal Rule of Bankruptcy Procedure 7015.

## IV. FACTS

### A. The Entities

12. Lazy S Enterprises, LLC ("Lazy S") is a Texas limited liability company registered with the Texas Secretary of State on January 24, 2017. Exhibit 15 at 1; Exhibit 6 at 15 (RFA 23). Lazy S denies that, as of August 1, 2024, it was registered with the Texas Secretary of State as an active entity having a status of "in existence." Exhibit 21 at 3 (RFA 2).

13. Lazy S's certificate of formation states that "[t]he Company will be managed by members" and identifies "JESSICA L. ESTEP" as its member and as its initial registered agent. Exhibit 15 at 2.

14. Lazy S's 2018 Texas Franchise Tax Public Information Report identifies Jessica L. Estep as "MBR/MGR," and she signed that report as "MBR/MGR" on March 28, 2018. Exhibit 4D.

15. Lazy S has used multiple assumed names. Its bankruptcy notice lists "dba Hammertime Contractors, dba Shook Cattle Co., dba J and J Container Services, dba Hammertime Storm Shelters, dba Hammertime Enterprise Roofing, LLC, dba Hammertime Storage Solutions, dba Hammertime Motor Sports." Exhibit 13 at 7. Lazy S admits that it filed assumed name certificates for J and J Container Services in 2017, Hammertime Contractors in 2019, Shook Cattle Company in 2020, and Hammertime Storm Shelters and Hammertime Storage Solutions in 2023. Exhibit 21 at 3 (RFA 4–8).

16. On April 15, 2024, before Plaintiffs paid any money, Lazy S registered "Hammertime Motorsports" as an assumed name. Jessica Lynn Shook is listed as the signer of the assumed-name certificate, "By: JESSICA SHOOK," in the capacity of "officer, general partner, manager, representative or attorney-in-fact of the entity." Exhibit 3 at 1–2; see Exhibit 6 at 15 (RFA 26); Exhibit 21 at 3 (RFA 3).

17. Jessica Lynn Shook is listed as the only officer on the Texas Franchise Tax Public Information Reports of Lazy S dated July 5, 2022, and May 11, 2023, and each of those reports lists her as the signer, with the title "OFFICER." The 2024 report, dated March 14, 2024, likewise lists "JESSICA L SHOOK" as the only officer and also as a director. Exhibit 4A–4C.

18. Lazy S identifies its past and present officers and shareholders as "Joshua Shook and Jessica Shook." Exhibit 8 at 6–7 (Interrogatory No. 11).

19. On May 29, 2024, Hammertime Enterprise Motorsports, LLC ("HEM") was formed. Its Certificate of Formation states that the company is managed by managers and lists "JOSHUA SHOOK" as Manager and "JESSICA SHOOK" as Manager 2. Exhibit 5 at 1. Joshua Lee Shook admits that "[t]he members of HEM were Jessica Shook and Joshua Shook." Exhibit 6 at 5 (Interrogatory No. 8).

20. Hammertime Equipment Group Corp was formed on January 23, 2025, and Joshua Lee Shook admits that he is or was a director. Exhibit 6 at 14 (RFA 16–17); Exhibit 14.

**B. The Representations**

21. In 2024, Joshua Lee Shook met with Plaintiffs in person at Plaintiffs' business, at his shop in Mansfield, at the property in Palmer, Texas, and at Plaintiffs' home, and discussed

Plaintiffs investing in the business, how the business would operate, and what the investment funds would be used for. Exhibit 6 at 4 (Interrogatory Nos. 1–2).

22. During those in-person meetings, Joshua Lee Shook asked Robert and Margaret Ruxton how much money they would need each month to live comfortably and discussed a $20,000 monthly return.

23. Joshua Lee Shook, individually and as agent of Lazy S and HEM, represented that Plaintiffs would provide the investment funds in exchange for shares in HEM. Plaintiffs never received any shares; HEM admits that "Plaintiffs do not hold any shares in Hammertime Enterprise Motorsports, LLC." Exhibit 9 at 4 (RFA 2).

24. In the alternative, the parties agreed that Plaintiffs would loan the funds for the development of the business, and that Joshua Lee Shook and the business would repay the loan in monthly payments, including interest, and would give Plaintiffs a share of the profits each month. Plaintiffs plead the transaction as an investment in exchange for shares in HEM or, in the alternative, as a loan repayable with interest and a share of the profits. Under either characterization, Plaintiffs provided the funds for the development of Hammertime Motorsports Park.

25. Before Plaintiffs paid any money, Joshua Lee Shook represented that Hammertime Motorsports was a company operating under the umbrella of Lazy S.

26. While Plaintiffs were still delivering funds, Joshua Lee Shook sent Plaintiffs an iMessage text on or about June 4, 2024, stating: "HMP is officially partnered with Ford for $500,000 per year !!! We are also now a licensed dealer of ford as well for merchandise & logos" Exhibit 1 at RUX000066.

27. No Ford contract, partnership agreement, or dealer license has been produced by Defendants or located in the records.

28. On June 18, 2024, after Plaintiffs had delivered all $460,000, Joshua Lee Shook sent Plaintiffs a proposed "Loan Agreement" through Rocket Lawyer with the message "here is the loan agreement for the $800k." Exhibit 17 at 4. The document is dated July 1, 2024, and names Lazy S, not HEM or Hammertime Motorsports, as "Borrower." Id. at 1. It recites a principal amount of $800,000.00, not the $460,000 Plaintiffs had delivered, payable in monthly installments of $20,000.00 from September 1, 2024, through January 1, 2028. Id. It states no interest rate and gives Plaintiffs neither a share of the profits nor an ownership interest. Id. at 1–3. Plaintiffs never signed it, and on July 3, 2024, Joshua Lee Shook cancelled the signing, stating that "[t]here was an error in the document." Id. at 3, 6.

**C. The $460,000**

29. In reliance on these representations, Plaintiffs delivered cashier's checks payable to "Hammertime Motorsports" between May 22, 2024, and June 5, 2024, totaling $460,000. Exhibit 2. The first check, a $50,000.00 Chase cashier's check dated May 22, 2024, names Garage Candy Autos, LLC as remitter, Exhibit 2 at 7; the remaining checks name Robert T. Ruxton and Margaret E. Ruxton as remitters. Exhibit 2 at 1–7. The checks were deposited at Citizens National Bank of Texas. Exhibit 2; Exhibit 6 at 5 (Interrogatory No. 5) ("The monies were put into CNB bank").

30. Joshua Lee Shook admits that the investment funds totaled $460,000. Exhibit 6 at 13 (RFA 2). He admits that the cashier's checks were not made out to Lazy S. Id. at 18 (RFA 51).

31. Joshua Lee Shook admits that "Plaintiffs provided investment funds to HEM for the development of Hammertime Motorsports Park in Palmer, Texas." Exhibit 6 at 13 (RFA 1). He admits that he signed the Commercial Lease for the premises at 8400 North Interstate 45, Palmer, Texas, id. at 17 (RFA 37); that neither Hammertime Motorsports nor HEM is the tenant on that lease; and that Lazy S is the tenant. Id. at 18 (RFA 47–49). He also admits that "Plaintiffs did not provide any funds for the development of Lazy S." Id. (RFA 50). The Commercial Lease names Myti Properties LLC as landlord and Lazy S Enterprises LLC as tenant of the property at 8400 N Interstate 45 in Palmer, Ellis County, Texas, for a term from June 1, 2024, through May 31, 2027, at base monthly rent of $17,000, $19,000, and $21,000 in successive lease years, and it is signed for Lazy S over the printed name "Josh Shook" and the title "CEO." Exhibit 18 at 1–4. The funds that Plaintiffs provided to develop the HEM park therefore went to improve premises leased by Lazy S, not by HEM.

32. The first check was delivered on May 22, 2024, before HEM existed. HEM was not formed until May 29, 2024. Exhibit 5; Exhibit 6 at 8 (Interrogatory No. 19). Lazy S states that the funds "were deposited into the Hammertime Motorsports account"—the assumed name of Lazy S registered under the certificate that lists Jessica Lynn Shook as its signer. Exhibit 8 at 6 (Interrogatory No. 10); Exhibit 3. Yet Lazy S denies that it "entered into the Contract with Plaintiffs on May 22, 2024." Exhibit 21 at 3 (RFA 1).

33. Joshua Lee Shook admits that "[y]ou and/or Jessica Shook made all purchases for HEM" and that "[y]ou and/or Jessica Shook controlled all funds used by HEM." Exhibit 6 at 17 (RFA 40–41).

34. Joshua Lee Shook admits that he was "in charge of HEM's business operations." Exhibit 6 at 17 (RFA 39). He states: "I was the managing member of HEM and tried to get the business up and running." Id. at 9 (Interrogatory No. 22).

35. Plaintiffs did not receive any monthly return, any ownership interest, or any return of their $460,000.

### D. What Happened to the Money

36. Defendants have never accounted for the $460,000. HEM's sworn list of purchases "using Investment Funds" is partial and totals $412,474.36, leaving $47,525.64 of the $460,000 unaccounted for, and HEM states that it "is still looking for receipts for the other amount of funds." Exhibit 7 at 5–6 (Interrogatory No. 6).

37. Many items on that list are dated before Plaintiffs delivered their first check on May 22, 2024, and before HEM was formed, including payments to Oscar Cisneros dated March 22, March 29, April 5, April 12, April 25, and May 3, 2024; a payment to Dallas Pro Reconditioning dated March 20, 2024; a payment to Cate Welding dated May 6, 2024; and a $12,005.00 entry dated April 22, 2024, with no payee. The entries dated before May 22, 2024, total $97,876.00. Id. at 5.

38. The list includes a skid steer ($132,000.00), a dozer blade ($10,750.00), and taxes and fees ($14,537.17), all dated August 14, 2024; an XUV8 Gator ($31,904.13) dated July 31, 2024; and an X-ONE canopy ($12,500.00) dated October 8, 2024. Id. at 5. Joshua Lee Shook states that "[t]he 6 way dozer has been repossessed," "[t]he hustler has been repossessed," and "[t]he John Deere Gator is in the process of being repossessed." Exhibit 6 at 5 (Interrogatory No. 7).

39. Most of the listed spending is dated after Plaintiffs demanded the return of their money on July 12, 2024. Exhibit 1 at RUX000086. The entries dated after July 12, 2024, total $272,971.97, including $157,287.17 for the skid steer, dozer blade, and taxes and fees on August 14, 2024; $48,000.00 to Dallas Paving on October 2, 2024; and $12,500.00 for the X-ONE canopy on October 8, 2024. Exhibit 7 at 5 (Interrogatory No. 6).

40. HEM states that the funds remaining are "None," and that "the investment money provided was not refundable. It went into business operations." Exhibit 7 at 6 (Interrogatory Nos. 7, 8, and 11). Joshua Lee Shook states that HEM had no assets before the funds, when it ceased business, when it left the premises, or now. Exhibit 6 at 8 (Interrogatory No. 20). HEM operated about six months and ceased operations in November 2024. Id. (Interrogatory No. 19).

41. Asked to produce the accounting, financial, and banking records showing the money invested in HEM, Joshua Lee Shook objected "that these documents are not kept within Defendant's possession." Exhibit 6 at 22 (RFP 2–3). He identified no plans, proposals, or summaries relating to the expenditure of the investment funds. Id. at 29–30 (RFP 32–33). HEM likewise objected that its bank statements, accounting records, and federal and franchise tax documents relating to the investment funds "are not kept in Defendant's possession" and stated that, "after diligent search and inquiry, no items have been identified that are responsive to this request." Exhibit 19 at 4–5 (RFP 5–6, 8–9). In its later responses, HEM identified no documents showing the money it earned from sales or other business operations, its payments to Joshua Shook or Jessica Shook, or the equipment it currently owns, Exhibit 20 at 5–6 (RFP 9, 13–15),

and it answered requests for its profit and loss statements, accounts receivable records, accounts payable records, and lists of its assets and liabilities with objections only. Id. at 7–8 (RFP 19–22).

42. Yet Lazy S identifies A Plus Bookkeeping and Tax, located in Ennis, Texas, as the person in charge of maintaining its accounting records and as the third-party accountant and tax preparer for HEM and for Lazy S d/b/a Hammertime Motorsports. Exhibit 8 at 7 (Interrogatory Nos. 13, 15). Joshua Lee Shook also objected to producing records of amounts that Lazy S and HEM paid him and the IRS Forms W-2 and 1099 issued by Lazy S and HEM. Exhibit 6 at 25–27 (RFP 16–19, 23).

**E. Excuses After Plaintiffs Asked for Their Money Back**

43. On Friday, July 12, 2024, Plaintiffs sent a group text message that begins "Josh and Jessica" and states that Plaintiffs "will not move forward with an interest in Hammertime Motorsports or Hammertime Motorsports Park" and that, "[a]s you stated on Tuesday, July 9th that the money we invested is in a separate account, please move forward with getting that money returned to us by Friday, July 19th, a week from today." A reply from Joshua Lee Shook states: "I'll get it done as soon as I get back to town." Exhibit 1 at RUX000086. HEM now denies that on July 9, 2024, it told Plaintiffs that the investment funds were held in a separate financial account. Exhibit 9 at 6 (RFA 21).

44. On or about July 15, 2024, Joshua Lee Shook texted Plaintiffs that he would "start working on transferring everything back around," that he was "currently out of town," and later that he was "still on the road" with "engine trouble." Exhibit 1 at RUX000080.

45. On August 5, 2024, Joshua Lee Shook, through the Lazy S Enterprises LLC email account, emailed: "I have to go thur several channels including attorneys on my behalf to approve or modify these request." Exhibit 16 at 1 (RUX000106). On August 28, 2024, Joshua Lee Shook, through the Lazy S Enterprises LLC email account, emailed that he was "currently out of town for a work trip" and asked for more time. Exhibit 11 at 9.

46. On September 16, 2024, Plaintiffs' counsel made written demand on Joshua Lee Shook and Lazy S for return of the $460,000 and the mini-truck repair costs. Exhibit 11 at 1. Defendants did not pay.

**F. The December 9, 2024 Amendment**

47. On December 9, 2024—after Plaintiffs had demanded their money and 21 days before Plaintiffs filed suit on December 30, 2024—Joshua Lee Shook signed and filed a Certificate of Amendment for Lazy S. It adds "JOSHUA SHOOK, MANAGING MEMBER" and deletes "JESSICA SHOOK, MANAGINE MEMBER - 852 EBENZER RD PALMER, TX 75152," while keeping Jessica Shook as registered agent. Exhibit 10 at 1–3.

## G. The State Court Judgment

48. Plaintiffs sued Hammertime Enterprise Motorsports, LLC, Lazy S Enterprises, LLC, and Joshua Lee Shook in Cause No. 116100 in the 40th Judicial District Court of Ellis County, Texas. Jessica Lynn Shook was not a party to that case.

49. Garage Candy Autos, LLC is a judgment creditor in Cause No. 116100. The Order Granting Plaintiffs' Motion for Summary Judgment recites that the motion was "filed by Robert Ruxton III, Margaret Ruxton, and Garage Candy Autos, LLC ('Plaintiffs')," and it orders "that Plaintiffs have judgment against Defendants, jointly and severally." Exhibit 12 at 1–2.

50. On May 4, 2026, the state court signed an Order Granting Plaintiffs' Motion for Summary Judgment. It found no genuine issue of material fact on Plaintiffs' claims for breach of contract, common-law fraud, fraudulent inducement, breach of fiduciary duty, and violation of the Texas Theft Liability Act. It found the three defendants jointly and severally liable on each claim, and found "clear and convincing evidence showing that Plaintiffs suffered harm resulting from Defendants' fraud." Exhibit 12 at 1–2.

51. The judgment awards $460,000.00 in actual damages for breach of contract, fraud, breach of fiduciary duty, and theft under the Texas Theft Liability Act; $2,747.23 for repairs to Plaintiffs' Suzuki mini truck; and attorney's fees and costs of $54,361.40, for a total of $517,108.63. By its terms, the judgment is final and appealable: it states that it "finally disposes of all of Plaintiffs' claims against Defendants and is appealable." Id. at 2.

52. Joshua Lee Shook did not appeal the judgment.

53. On July 9, 2026, a proof of claim for $517,108.63, based on the state court judgment, was filed in Defendants' bankruptcy case in the names of Robert Ruxton III, Margaret Ruxton, and Garage Candy Autos, LLC.

## H. The Meeting of Creditors

54. At the § 341 meeting on July 14, 2026, Joshua Lee Shook testified under oath that the schedules and statement of financial affairs were true and correct, that all of his property had been listed, and—asked whether, other than what was scheduled, he had transferred, sold, or gifted any property of significant value in the last two to four years—answered "No ma'am." Jessica Lynn Shook adopted his testimony and had nothing to add or change.

55. He also testified under oath at the July 14, 2026 meeting of creditors that neither he nor Jessica Lynn Shook owns a house, land, or other real estate, and that neither has owned a house, land, or other real estate in the last four years.

56. He also testified at that meeting that he is "the sole owner" of Hammertime Enterprise Roofing. But he has admitted that he and Jessica Lynn Shook "are or were managers of Hammertime Enterprise Roofing LLC." Exhibit 6 at 15 (RFA 19).

57. He testified that on the petition date a business checking account at Point Bank in the name of Hammertime Enterprise Roofing held about $17,000 of customer deposits, that he and Jessica Lynn Shook are the signers on that account, and that by the date of the meeting it held about $1,200.

58. He testified under oath at the July 14, 2026 meeting of creditors that no business he owns has an asset worth more than $5,000.

59. He testified that he now has a cash vehicle truck that was purchased.

60. Asked about his income, he first testified that he and Jessica Lynn Shook support themselves from Hammertime Enterprise Roofing, and then that the money is "not from Hammer Time itself," but from odd jobs for friends and family, deposited in either a personal or a business account at Point Bank.

**COUNT I — 11 U.S.C. § 523(a)(2)(A) (JOSHUA LEE SHOOK)**

61. A debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) to the extent it was obtained by false pretenses, a false representation, or actual fraud. To establish false representation or false pretenses, a plaintiff must show that the debtor made a representation, knew it was false, made it with the intent to deceive, and that the creditor actually and justifiably relied on it and sustained a loss as a proximate result. Gen. Elec. Capital Corp. v. Acosta (In re Acosta), 406 F.3d 367, 372 (5th Cir. 2005). A promise of future performance is a false representation if, when the promise was made, the debtor had no intention of performing. Allison v. Roberts (In re Allison), 960 F.2d 481, 484 (5th Cir. 1992). Actual fraud also encompasses forms of fraud that can be effected without a false representation. Husky Int'l Elecs., Inc. v. Ritz, 578 U.S. 355, 359–60 (2016).

62. Plaintiffs incorporate paragraphs 1–61 as if fully set forth here.

63. Joshua Lee Shook obtained $460,000 from Plaintiffs by false pretenses, false representations, and actual fraud: the promised $20,000 monthly return, the promised ownership interest (or, in the alternative, the promised repayment of a loan with interest and a share of the profits), and the representation that "HMP is officially partnered with Ford."

64. The representations were false when made, and Joshua Lee Shook knew they were false or made them recklessly and with no intention of performing. His intent is shown by, among other things, the absence of any Ford agreement; the use of the funds for equipment that was later repossessed and for items dated before Plaintiffs paid and before HEM existed; the failure to keep or produce records; the statement that the money was "not refundable"; the

purchases he continued making after Plaintiffs asked for their money back; and the excuses he gave after Plaintiffs asked for their money back.

65. Plaintiffs actually and justifiably relied on the representations by delivering $460,000, and they were damaged in at least that amount.

66. In the alternative, Joshua Lee Shook is collaterally estopped from relitigating the elements of fraud. Collateral estoppel applies in dischargeability proceedings, Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991), and the preclusive effect of a Texas judgment is governed by Texas law. Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 601 (5th Cir. 1998); see Matter of Keaty, 397 F.3d 264, 270–71 (5th Cir. 2005). Under Texas law, collateral estoppel applies when the facts sought to be litigated in the second action were fully and fairly litigated in the first action, those facts were essential to the judgment, and the parties were cast as adversaries in the first action. Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex. 1994). The issues of fraud and fraudulent inducement were fully and fairly litigated in Cause No. 116100, were essential to the judgment, and Joshua Lee Shook was a party. Exhibit 12. This alternative applies to Joshua Lee Shook only and to Count I only, and Plaintiffs do not rely on the judgment to establish malice under § 523(a)(6).

67. The debt of Joshua Lee Shook to Plaintiffs is excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

**COUNT II — 11 U.S.C. § 523(a)(2)(A) (JESSICA LYNN SHOOK)**

68. Plaintiffs incorporate paragraphs 1–61 and 63–65 as if fully set forth here.

69. Plaintiffs do not seek to impose liability on Jessica Lynn Shook based solely on her marriage to Joshua Lee Shook.

70. Direct participation. Jessica Lynn Shook is listed as the signer of the assumed-name certificate for "Hammertime Motorsports," the name to which the checks were made payable, is listed as the only officer of Lazy S on its 2022, 2023, and 2024 public information reports and is identified by Lazy S as one of its two officers and shareholders, was a member and manager of HEM, was a signer on the Point Bank account, and—by Joshua Lee Shook's admission—with him made all purchases for HEM and controlled all funds used by HEM. Exhibits 3–6; Exhibit 8 at 6–7 (Interrogatory No. 11). Joshua Lee Shook testified under oath at the July 14, 2026 meeting of creditors that she is a signer on the Point Bank account. Joshua Lee Shook told Plaintiffs that Lazy S was a company owned by his wife, Jessica Lynn Shook. Through her membership and management of HEM and her joint control of all of its funds, she participated in and benefited from obtaining and using Plaintiffs' money.

71. Imputed liability. A debtor who is liable for a partner's or agent's fraud cannot discharge that debt, even without personal culpability. Bartenwerfer v. Buckley, 598 U.S. 69

(2023); Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.), 239 F.3d 746, 749 (5th Cir. 2001); see Tummel & Carroll v. Quinlivan (In re Quinlivan), 434 F.3d 314, 319 (5th Cir. 2005). Marriage alone does not impute one spouse's fraud to the other, but fraud may be imputed under agency principles where the spouses were involved in a business or scheme together. Allison, 960 F.2d at 485–86; see also Tower Credit, Inc. v. Gauthier (In re Gauthier), 349 F. App'x 943 (5th Cir. 2009). Joshua Lee Shook acted as Jessica Lynn Shook's partner and agent in the business of Lazy S, doing business as Hammertime Motorsports, and of HEM, of which they were the two members and managers. HEM's certificate of formation names Joshua Shook and Jessica Shook as its managers, Exhibit 5 at 1, and Joshua Lee Shook admits that the members of HEM were Jessica Shook and himself, Exhibit 6 at 5 (Interrogatory No. 8), and that he and/or Jessica Lynn Shook made all purchases for HEM and controlled all funds used by HEM, Exhibit 6 at 17 (RFA 40–41). Lazy S identifies its officers and shareholders as Joshua Shook and Jessica Shook, Exhibit 8 at 6–7 (Interrogatory No. 11), and states that Plaintiffs' funds were deposited into the Hammertime Motorsports account, Exhibit 8 at 6 (Interrogatory No. 10)—the assumed name registered under the certificate that Jessica Lynn Shook signed. Exhibit 3 at 1–2.

72. In the alternative, Jessica Lynn Shook is liable under Texas Business Organizations Code §§ 21.223(b) and 101.002 because the entities were used to perpetrate an actual fraud on Plaintiffs primarily for the direct personal benefit of Defendants, including Jessica Lynn Shook, who as a member and manager of HEM jointly controlled all funds used by HEM.

73. Jessica Lynn Shook is liable to Plaintiffs for $517,108.63, the full amount of the state court judgment, plus interest, and that debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

**COUNT III — 11 U.S.C. § 523(a)(4) (BOTH DEFENDANTS)**

74. Plaintiffs incorporate paragraphs 1–60, 63–65, and 69–72 as if fully set forth here.

75. Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. Miller, 156 F.3d at 602.

76. Larceny. Defendants obtained Plaintiffs' $460,000 by fraud, with the intent to deprive Plaintiffs of it, and appropriated it to their own use without Plaintiffs' consent. The state court found Joshua Lee Shook liable for theft under the Texas Theft Liability Act. Exhibit 12. A debtor cannot discharge a debt that arises from larceny so long as the debtor is liable to the creditor for the larceny. Cowin v. Countrywide Home Loans, Inc. (In re Cowin), 864 F.3d 344, 351 (5th Cir. 2017).

77. Embezzlement, in the alternative. If Defendants are found to have lawfully received the funds for the stated purpose of developing Hammertime Motorsports Park, they fraudulently appropriated those funds for uses not authorized by Plaintiffs, including items dated before Plaintiffs paid and equipment later repossessed, and cannot account for the rest. After Plaintiffs demanded the return of their money on July 12, 2024, Defendants continued to spend the funds, including $157,287.17 on August 14, 2024, $48,000.00 on October 2, 2024, and $12,500.00 on October 8, 2024. Exhibit 1 at RUX000086; Exhibit 7 at 5 (Interrogatory No. 6). Defendants also used funds provided for the HEM park on premises leased by Lazy S. Exhibit 6 at 13, 18 (RFA 1, 47–50).

78. Fraud or defalcation while acting in a fiduciary capacity, in the further alternative. Plaintiffs entrusted the $460,000 to Defendants for a particular purpose—the development of Hammertime Motorsports Park—whether as an investment in exchange for shares in HEM or, in the alternative, as a loan repayable with interest and a share of the profits, and Defendants accepted the funds and undertook to manage and use them for that venture. The state court found that Hammertime Enterprise Motorsports, LLC, Lazy S Enterprises, LLC, and Joshua Lee Shook "are jointly and severally liable to Plaintiffs for breaching fiduciary duties owed to Plaintiffs." Exhibit 12 at 1. Jessica Lynn Shook is liable for that debt through her membership, management, agency, representative capacity, and authority in Lazy S and HEM.

79. For purposes of § 523(a)(4), a fiduciary capacity arises from a technical or express trust, not from a trust implied by law from the wrong itself. Matter of Tran, 151 F.3d 339, 342 (5th Cir. 1998). Defalcation requires a culpable state of mind involving knowledge of, or gross recklessness in respect to, the improper nature of the fiduciary behavior. Bullock v. BankChampaign, N.A., 569 U.S. 267, 269 (2013). Defendants held the funds subject to the specific terms on which they were entrusted, and they knew of, or were grossly reckless as to, the impropriety of using them for items dated before Plaintiffs paid and for equipment that was later repossessed. Defendants further continued purchasing property with Plaintiffs' funds after Plaintiffs had requested the funds be refunded.

80. The debt is excepted from discharge under 11 U.S.C. § 523(a)(4).

**COUNT IV — 11 U.S.C. § 523(a)(6) (BOTH DEFENDANTS)**

81. Plaintiffs incorporate paragraphs 1–60, 63–65, 69–72, and 76–77 as if fully set forth here.

82. Section 523(a)(6) excepts from discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. An injury is willful and malicious when there is either an objective substantial certainty of harm or a subjective motive to cause harm. Miller, 156 F.3d at 606; Williams v. Int'l Bhd. of Elec. Workers Local 520 (In re Williams), 337 F.3d 504, 509 (5th Cir. 2003). The debtor must intend the injury, not merely the act that leads to the injury. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).

83. Defendants willfully and maliciously injured Plaintiffs and their property by obtaining $460,000 through false representations and converting it, with either an objective substantial certainty of harm or a subjective motive to cause harm. After Plaintiffs demanded the return of their money on July 12, 2024, and Joshua Lee Shook replied that he would "get it done," Defendants spent $157,287.17 of the funds on August 14, 2024, $48,000.00 on October 2, 2024, and $12,500.00 on October 8, 2024. Exhibit 1 at RUX000086; Exhibit 7 at 5 (Interrogatory No. 6). Plaintiffs plead this count independently and do not rely on the state judgment to establish malice.

84. The debt is excepted from discharge under 11 U.S.C. § 523(a)(6).

**COUNT V — 11 U.S.C. § 727(a)(2) (JOSHUA LEE SHOOK)**

85. Plaintiffs incorporate paragraphs 1–60 as if fully set forth here.

86. Section 727(a)(2) denies a discharge if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, (A) property of the debtor within one year before the date of the filing of the petition, or (B) property of the estate after the date of the filing of the petition. 11 U.S.C. § 727(a)(2).

87. With intent to hinder, delay, or defraud creditors, Joshua Lee Shook transferred, removed, or concealed property of the debtor within one year before the petition, or property of the estate after the petition, as shown by the following:

88. On the petition date, the Point Bank account in the name of Hammertime Enterprise Roofing, on which Joshua Lee Shook and Jessica Lynn Shook are the signers, held about $17,000; by the July 14, 2026 meeting of creditors it held about $1,200. Joshua Lee Shook so testified under oath at the July 14, 2026 meeting of creditors.

89. He testified that he now has a cash vehicle truck that was purchased.

90. His sworn "No ma'am" answer at the § 341 meeting to whether he had transferred, sold, or gifted property does not account for the drop in the Point Bank balance or the purchase of the truck.

91. In the alternative, to the extent any of the funds described above were held in the name of an entity, they were Joshua Lee Shook's property, or property he controlled for his own benefit, because he admits that he and/or Jessica Lynn Shook controlled all funds used by HEM. Exhibit 6 at 17 (RFA 40–41).

92. Joshua Lee Shook's discharge should be denied under 11 U.S.C. § 727(a)(2).

**COUNT VI — 11 U.S.C. § 727(a)(3) (JOSHUA LEE SHOOK)**

93. Plaintiffs incorporate paragraphs 1–60 as if fully set forth here.

94. Section 727(a)(3) denies a discharge if the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3). The plaintiff bears the initial burden to show that the debtor failed to keep and preserve financial records and that this failure prevented the plaintiff from ascertaining the debtor's financial condition; the debtor must then prove that the inadequacy was justified under all of the circumstances. Robertson v. Dennis (In re Dennis), 330 F.3d 696, 703 (5th Cir. 2003).

95. Joshua Lee Shook concealed, failed to keep, or failed to preserve recorded information, including books, documents, records, and papers, from which his financial condition and business transactions might be ascertained. He states that the accounting, financial, and banking records of the investment are "not kept within Defendant's possession," and produced no plans or spending summaries. Exhibit 6 at 22, 29–30. HEM, whose business operations he admits he was in charge of, likewise identified no bank statements, accounting records, or tax documents relating to the investment funds, and it answered requests for its profit and loss statements, accounts receivable and accounts payable records, and lists of its assets and liabilities with objections only. Exhibit 19 at 4–5 (RFP 5–6, 8–9); Exhibit 20 at 7–8 (RFP 19–22); Exhibit 6 at 17 (RFA 39). HEM's sworn list of purchases "using Investment Funds" totals $412,474.36, of which $97,876.00 is dated before Plaintiffs delivered their first check on May 22, 2024, and $272,971.97 is dated after Plaintiffs demanded their money back on July 12, 2024; $47,525.64 of the $460,000 is not accounted for at all, and HEM is "still looking for receipts." Exhibit 7 at 5–6. Yet Lazy S identifies A Plus Bookkeeping and Tax as the keeper of its accounting records and as the accountant and tax preparer for HEM and for Lazy S d/b/a Hammertime Motorsports. Exhibit 8 at 7 (Interrogatory Nos. 13, 15). The records of HEM and Lazy S are records from which Joshua Lee Shook's own financial condition and business transactions might be ascertained: HEM states that Lazy S "was another business that was owned by Joshua Shook," Exhibit 7 at 5 (Interrogatory No. 5); he signed and filed the December 9, 2024 Certificate of Amendment naming himself Lazy S's "MANAGING MEMBER," Exhibit 10 at 1–3; he admits that he was in charge of HEM's business operations and that he and/or Jessica Lynn Shook made all purchases for HEM and controlled all funds used by HEM, Exhibit 6 at 17 (RFA 39–41); and Plaintiffs' $460,000 was deposited into the Hammertime Motorsports account of Lazy S, Exhibit 8 at 6 (Interrogatory No. 10), and, according to HEM, used for HEM's purchases, Exhibit 7 at 5–6. These failures have prevented Plaintiffs from ascertaining Joshua Lee Shook's financial condition and business transactions, including how the $460,000 was spent, what became of the $47,525.64 that is not accounted for, and what Lazy S and HEM paid him.

96. The failure was not justified under all of the circumstances. Joshua Lee Shook's discharge should be denied under 11 U.S.C. § 727(a)(3).

**COUNT VII — 11 U.S.C. § 727(a)(4)(A) AND (a)(4)(D) (JOSHUA LEE SHOOK)**

97. Plaintiffs incorporate paragraphs 1–60 as if fully set forth here.

98. Sections 727(a)(4)(A) and (a)(4)(D) deny a discharge if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, or withheld from an officer of the estate entitled to possession under title 11 any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs. 11 U.S.C. § 727(a)(4)(A), (D). Under § 727(a)(4)(A), the plaintiff must show that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992).

99. Joshua Lee Shook knowingly and fraudulently made false oaths in or in connection with the case, on material matters, including the following:

100. He testified under oath at the July 14, 2026 meeting of creditors that he is the sole owner of Hammertime Enterprise Roofing, but admits that he and Jessica Lynn Shook are or were its managers. Exhibit 6 at 15 (RFA 19).

101. Lazy S has stated that Joshua Lee Shook's role at Lazy S is "None," Exhibit 8 at 7 (Interrogatory No. 12), and Joshua Lee Shook has denied being its managing member, Exhibit 6 at 15 (RFA 22), yet he signed the December 9, 2024 amendment naming himself "MANAGING MEMBER," Exhibit 10, he signed the Commercial Lease for Lazy S over the printed name "Josh Shook" and the title "CEO," Exhibit 18 at 4; Exhibit 6 at 17 (RFA 37), and HEM states that Lazy S "was owned by Joshua Shook," Exhibit 7 at 5 (Interrogatory No. 5).

102. He denies that he and Jessica Lynn Shook are managers of HEM, Exhibit 6 at 14 (RFA 9), although he is listed as its Manager, admits that he and Jessica Lynn Shook were its members, admits that he was in charge of HEM's business operations, and states that "I was the managing member of HEM." Exhibit 5 at 1; Exhibit 6 at 5 (Interrogatory No. 8), 9 (Interrogatory No. 22), 17 (RFA 39).

103. At the July 14, 2026 meeting of creditors, he gave inconsistent sworn testimony about the source of his income, and he testified that he made no transfers.

104. He testified under oath at the July 14, 2026 meeting of creditors that no business he owns has an asset worth more than $5,000, although he also testified that the Point Bank account of Hammertime Enterprise Roofing, a business he testified he solely owns, held about $17,000 on the petition date.

105. On information and belief, Joshua Lee Shook withheld from the Chapter 7 trustee, an officer of the estate entitled to possession under title 11, recorded information, including books, documents, records, and papers, relating to his property, financial affairs, business dealings, and the disposition of the $460,000.

106. Joshua Lee Shook's discharge should be denied under 11 U.S.C. § 727(a)(4)(A) and (a)(4)(D).

**COUNT VIII — 11 U.S.C. § 727(a)(5) (JOSHUA LEE SHOOK)**

107. Plaintiffs incorporate paragraphs 1–60 and 91 as if fully set forth here.

108. Section 727(a)(5) denies a discharge if the debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the debtor's liabilities. 11 U.S.C. § 727(a)(5). Although the burden of persuasion remains on the objecting creditor, once the creditor makes a prima facie case the debtor must offer a satisfactory explanation of the loss of assets. First Tex. Sav. Ass'n v. Reed (In re Reed), 700 F.2d 986, 992–93 (5th Cir. 1983).

109. Joshua Lee Shook has failed to explain satisfactorily the loss of the $460,000 he received in May and June 2024. The only accounting is HEM's partial list of purchases, which Joshua Lee Shook verified as HEM's corporate representative. It leaves $47,525.64 unaccounted for, states that HEM "is still looking for receipts for the other amount of funds," and says the money "went into business operations." Exhibit 7 at 5–6, 11 (Interrogatory Nos. 6, 11). Joshua Lee Shook also states that HEM has no assets. Exhibit 6 at 8 (Interrogatory No. 20). The $460,000 was Joshua Lee Shook's asset or was under his control: the cashier's checks were payable to "Hammertime Motorsports," the assumed name of Lazy S, and were deposited into the Hammertime Motorsports account, Exhibit 2; Exhibit 3; Exhibit 8 at 6 (Interrogatory No. 10); HEM states that Lazy S "was owned by Joshua Shook," Exhibit 7 at 5 (Interrogatory No. 5); he signed the December 9, 2024 amendment naming himself Lazy S's "MANAGING MEMBER," Exhibit 10; he signed the Commercial Lease for Lazy S over the printed name "Josh Shook" and the title "CEO," Exhibit 18 at 4; Exhibit 6 at 17 (RFA 37); and he admits that he and/or Jessica Lynn Shook made all purchases for HEM and controlled all funds used by HEM, Exhibit 6 at 17 (RFA 40–41).

110. Joshua Lee Shook's discharge should be denied under 11 U.S.C. § 727(a)(5).

**PRAYER**

Plaintiffs ask the Court to enter judgment:

A. determining that the debt of Joshua Lee Shook to Plaintiffs, including the $517,108.63 awarded in Cause No. 116100 ($460,000.00 in actual damages, $2,747.23 in repair costs, and

$54,361.40 in attorney's fees and costs), is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6);

B. determining that the debt of Jessica Lynn Shook to Plaintiffs of $517,108.63, plus interest, is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6);

C. denying Joshua Lee Shook a discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4)(A), (a)(4)(D), and (a)(5);

D. awarding Plaintiffs a money judgment against Jessica Lynn Shook for $517,108.63;

E. awarding Plaintiffs pre-judgment interest as provided by law, post-judgment interest under 28 U.S.C. § 1961, their reasonable attorney's fees to the extent recoverable by law, and their costs; and

F. granting all other relief to which Plaintiffs are entitled.

Respectfully submitted,

MCDONNELL COATES, LLP
215 W. 2nd St.
Waxahachie, TX 75165
Tel: 972.923.2881
Fax: 972.937.3415

By: */s/ Kevin McDonnell*
Kevin McDonnell
Texas Bar No: 24030762
Email: kmcdonnell@simplified.services
ATTORNEY FOR
PLAINTIFFS/CREDITORS

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2026, a true and correct copy of this First Amended Complaint, with all exhibits, was served through the Court's CM/ECF system on all parties and counsel registered to receive electronic notice in this adversary proceeding, including Clayton Everett, Norred Law, PLLC, counsel for Defendants, and Vicki Kathleen McCarthy, counsel for the Debtors in the main case. I further certify that on the same date a copy was sent by first-class United States mail, postage prepaid, to Areya Holder, Chapter 7 Trustee, P.O. Box 2105, Addison, TX 75001-

2105, and to the Office of the United States Trustee, 1100 Commerce St., Room 976, Dallas, TX 75242.

/s/ Kevin McDonnell